Case No. 18-2001, Oyd McCray v. Pat Warren. Argument not to exceed 15 minutes per side. Ms. Swanson, you may proceed. Good afternoon, Your Honors. Casey Swanson on behalf of Oyd McCray. I would like to reserve three minutes for rebuttal. Although not required to, Oyd McCray has proven he is innocent. He has also proven that Anthony Jones, with the help of Darchelle Effinger, committed this crime. The Shloop standard requires even less. Oyd McCray must and has demonstrated that it is more likely than not that no reasonable juror would convict him based on the record as it exists today. That is the standard the Supreme Court set forward in Shloop. That is the standard Oyd McCray has met. And that is the standard the District Court failed to properly apply. The District Court failed to apply this standard when it compartmentalized evidence of Oyd McCray's innocence. It held each piece of evidence up in isolation against the trial testimony of Eric Perrin as it existed in 1994. And by doing it in this way, the District Court failed to see that Perrin misidentified Oyd McCray. It failed to see that the collective credibility of the witnesses who say Oyd McCray was not the shooter is supported by the record. And it failed to see that Darchelle Effinger's recantation is credible. What relief now are you seeking here to send it back to the District Court or just to have an issue of writ entirely? Yes, we are asking the Court to vacate the District Court's decision dismissing his petition and remand back to the District Court. And then what's the District Court supposed to do with it? Allow the petition to proceed to the merits. So the question here, this threshold inquiry, is just about whether or not Oyd McCray has proven that it's more likely than not that no reasonable juror based on the record as a whole would vote to convict him. And he has proven that. This is not the same case that it was in 2007 when it was before this Court. Well, one thing's the same is that Eric Perrin has never, alone among many of these folks, has never recanted his unequivocal testimony at trial. Very candid, I think, about the limitations of his perception, but pretty firm in his conclusions. And he himself has never recanted. Utterly disinterested witness. So, I mean, that part hasn't changed. There are a couple aspects of this case that have changed after this Court remanded the case that discredit his identification, including statements from his son that he recanted. After his son is incarcerated with McCray and his son says that his father purportedly had regrets or whatever, but we never hear from Mr. Perrin. A lot of these witnesses are people who are incarcerated with McCray and come out, sometimes telling untruths about the way they found out about the case, but they come out and say things in favor of McCray. And that type of testimony, affidavit, et cetera, is not particularly compelling in the case law. Your Honor, the question isn't whether a reasonable juror could discount Mr. Smith's testimony or Mr. Character's testimony. The question is about whether when we look at the record as a whole, could a reasonable juror find that there's no reasonable doubt? It's actually harder than that. I mean, this is, I don't know of a harder standard, I mean, you know, in the law, frankly, to meet. You have to show that every rational juror would find reasonable doubt. We have to show that that's more likely than not. And that's lower, lower than a sufficiency of the evidence standard, is lower than the standard for a freestanding innocence claim. And when we look, I just want to address one more thing about Eric Perrin. After this case was remanded, we got the homicide file from the Detroit Police Department. And there's all sorts of things in that file that lend to the fact that he misidentified Oid McRae, including the suggestiveness of a lineup. This court didn't have that information in 2007. We can see in that lineup that there are lineup participants that match descriptions of the shooter and the driver, which were two different descriptions that Eric Perrin gave. We can see in that file that Eric Perrin made tentative statements about Oid McRae. He looks like the shooter. He could be the shooter, but the shooter was clean-shaven. I mean, he was crossed on that. He was very candid about all that. He wasn't trying to sell anything, is the impression that comes off the page. The jury got all that, and they got to see the man in person. His testimony at the probable cause hearing, his testimony at the trial, it's very consistent. And the jury made their judgment. Apart from the suggestive lineup thing, they heard all of the, yeah, it could be, and then the stuff about the beard, and it was a lot lighter in the lineup room than it was that day on the street. I mean, the jury got all that, and apparently all 12 of them thought beyond a reasonable doubt that Mr. Perrin's testimony was reliable, notwithstanding those criticisms. Eric Perrin actually denied saying those tentative statements during the trial. And when counsel attempted to impeach him with the testimony of the lineup attorney, he wasn't able to get to the question of whether Eric Perrin during that lineup made those tentative statements. He also wasn't cross-examined on the fact that he made similarly tentative statements about another individual in the lineup and said this person favors the driver. It was an individual that we know wasn't the driver. We know Dartrell Effinger was the driver, just like we know that Anthony Jones was the passenger who got into the Blue Malibu, and it matters. We don't know if anybody got in the Blue Malibu, right? I mean, I'm going to call Dartrell Effinger, or Ettinger, Effinger.  I mean, he changes his story about four times, and one of them he's got somebody with him, and another time I think he doesn't. So we don't know really anything based on what Mr. Effinger is telling us. We know that all witnesses, including Eric Perrin, agree that the shooter got into the passenger seat of the Blue Malibu. And we know after this case was remanded that in 1994, Anthony Jones told the Detroit police that he got into the passenger seat of the Blue Malibu. And so again, when we look at all of this as a whole, there is a quality of the evidence that has changed and lends credibility to Perrin's misidentification to the credibility of the eyewitnesses who exculpate Mr. McRae. Four of them are family members. So unlike the situation in trial where none of these four family members had come forward, like why wouldn't his sister come forward then and say he was babysitting for my child at the time of the murder? Why would his sister not come forward for eight years or whatever it was? But then, by the time we get all these affidavits, now we have four members of the McRae family, four, on Bessemer Street, in different places because none of them say they're together, purportedly witnessing all of this stuff, not counting Mr. McRae himself. Is that credible? It is when we look at the fact that there are other witnesses who aren't related who say the same thing. It is when we look at the fact that in the homicide file, we can see that Anthony Jones is the one who got into the passenger seat of the Malibu, which is where Eric Perrin said the shooter got in. I mean, Mr. Jones is a tough choice as the alternative killer here. I mean, and really we face something very similar in the Kevin Keith case, which had the same standard. I mean, there everyone agreed that the person who shot up the victims was north of 250 pounds. And the person that Mr. Keith was pointing to as the real killer was rail-thin 140 pounds, 5'11". Here, all the evidence is pretty consistent, at least in the early first five years of this. This is somebody who's around 5'6", medium build, slender, slim, what have you. And then Mr. Jones now, who is supposed to be the real killer, he's 5'6", 265. He weighs 100 pounds more than kind of the range of the person who was described at the time. I mean, doesn't that present a problem as to whether some of these folks are telling the truth? It does not change the fact that it's more likely than not that there's reasonable doubt here and that any reasonable juror would find that. When we look at some of the other cases that apply the Schlup standard, it's not necessary that to meet this threshold requirement and pass through the gateway onto the merits that all of the evidence presented needs to be infallible and there can't be any credibility issues. There are plenty of cases where people have met this standard, even though their evidence might have some credibility issues. But nevertheless, courts have found, like in House, the Supreme Court said that in isolation, the jury could disregard evidence of the fact, this idea that this third party was actually the killer. But when we look at it in combination with other pieces of the record, it's sufficient to at least meet this threshold requirement that it's more likely than not that any reasonable juror would find reasonable doubt. I've outlined on my pad here every witness, thought about them in isolation and collectively. I mean, how much weight do we really put on a witness like Roderick Character, who just flat out admits repeatedly. He admits in the hearing, oh, I was lying about that. I was lying about that, too. You know, they meet while they're incarcerated and he comes in and says it's, again, someone with a description much different than the one at the time. And he himself just, you know, very insouciantly admits repeatedly he was lying earlier about things. His statements that Oid McRae was not the shooter are consistent with the record as a whole. But if a witness is not credible, then why would that suffice, why would that matter much in meeting a standard as demanding as this one? That's what I just. Eric Perrin is incredible. Eric Perrin identified some person who we know was not the driver as the getaway driver. In the same way that he picked Oid McRae as the shooter. He was probably focused on the individual with his hand inside the car shooting somebody, as opposed to somebody who was, you know, just stepping out as a driver. Did Perrin say that the shooter got into the car with the driver, the blue Malibu with the driver? Yes. And did Jones say that he was the person who got into the car with the driver? Yes. So Eric Perrin then, your new evidence shows that Eric Perrin's own testimony is implicating Jones and not the defendant here. Yes. And Jones said that in the interview with the officer, right? Where a short time later, I guess in the evidence or the probable cause hearings, a short time later, he denies ever talking to the officer and says he never said any of those things? Is that, are we talking about the same testimony where he says he was in the car? I'm not sure I understand the court's question. It's at the, during his statement to police, he said that he got into the passenger seat of the Malibu. And then he repudiates that entire statement, says he didn't even talk to the officer. Oh, I understand the court's question. I know that at the preliminary exam, he said it wasn't William McRae that was the shooter. I don't have the details of. He repudiates it. He actually says he did not even speak to the officer who took down the very point, among others, that Jones says he was in the car with Mr. Effinger. The idea that Anthony Jones is the shooter, though, is still consistent with the rest of the record. And your honors, I do see that my time is up. I would just ask that the court reverse the district court's decision. Thank you. Good afternoon, your honors. Assistant Attorney General Scott Shimkus appearing on behalf of respondent. Petitioner McRae really has to overcome three obstacles here in order to get the relief that he's seeking. The first of which, that really wasn't discussed in the appellant's argument, but I want to make sure is at the forefront of this court's memory here, is that the context we're in is a 60B motion. This is not an initial petition. And so not only does Mr. McRae need to show that the district court abused its discretion in denying the 60B motion, but then he also needs to show, second, that the district court clearly erred in its credibility determinations and, third, ultimately that no reasonable juror would have voted to convict Mr. McRae in light of this new evidence. And it's true that this court and the district court needed to look at all of the evidence in totality. But because most of this evidence, about three-quarters of this evidence, has already been analyzed by this court, the real question this court needs to look at and that the district court needed to look at, too, is whether these new witnesses change anything about what the previous evidence showed. And so it really is key to look at these three new witnesses, Ms. Howes, Mr. Carrector, and Mr. Effinger, and then the affidavit, not the live testimony, but the affidavit of Mr. Smith. And looking at it, as the district court did, none of that evidence changes anything about the evidence that was before this court in 2007. And so it really makes a difference here that that new evidence needs to affect the old evidence. Did most of this evidence come about after all the deadlines have passed? I'm sorry, Your Honor, could you repeat that question? Did most of this evidence that we're looking at arise after the deadline upon which they could file this petition? Yes, Your Honor. So, for instance, Mr. Carrector's affidavit, I believe, was from 2009, and so that was even after this court made its decision in 2007. And then Ms. Howes, Dante Effinger, and Mr. Demetra Smith, I believe all came after this court's decision. In fact, that's why we're in the context we're in, in terms of a 60B motion, because Mr. McCrae did not have that evidence at the original hearing. I understand that this case was held in this court for a number of years, attending developments in the state. Yes. Does the record indicate what happened in those proceedings in the state? I don't believe we have a record in terms of any sort of decision that was made, but my understanding, and an appellant can certainly correct me if I'm wrong, because I think they had more involvement in this than I did, but my understanding is that the case was being reviewed by the Wayne County Convection Integrity Unit, and they were taking their time to review all of the evidence, and their standard is that the applicant must show by clear and convincing evidence that he did not commit the crime, which really, aside from the probability standard, is very similar to what this court needs to look at. And so is there an actual report or document that public notice could be taken of regarding what happened during those proceedings that took six years or so? No, Your Honor. My understanding is the CIU, much like the CIU at our office, doesn't issue any sort of memorandum or report or anything like that. I believe they communicate with the applicant that, you know, effectively either we're not finding relief here or we're closing your case or something along those lines. Whatever evidence they looked at is beside the point here. I'm sorry, can you repeat that? Whatever evidence they may have looked at is beside the point here because it's not in our record. Well, my understanding is that they would look at most of the evidence that this court has. It's possible they had other evidence this court does not have, but that really cuts against Mr. McRae more than it cuts against us, because if the CIU had even more and they didn't find relief, then, you know. Why isn't there enough evidence in the totality here to have grave doubt as to whether or not it was not Mr. McRae, but rather was Jones who committed the murder here? Well, as Judge Keflich said, I think the strongest evidence here is that of the disinterested eyewitness, which is Mr. Perrin. But the other issue, Your Honor. So Perrin says that McRae jumped into the car. Correct. He did testify to that. And there's no significant, in your view, there's no significant evidence discrediting that. If there were significant evidence, that's really the key, isn't it? That Perrin said, I saw the shooter. The shooter jumped into the car, and that was McRae. Right. And the district court sort of grappled with this proposition that, you know, Mr. Perrin says someone got in the car. Mr. Effinger says no one got in my car. But then you have Mr. Jones who says he, at times, he did get into Mr. Effinger's car, and at times he did not get into Mr. Effinger's car. So the district court postulated that it's possible McRae did get into Mr. Effinger's car, but Mr. Effinger wanted, you know, so that he wouldn't be pegged as an accomplice or an accessory in this case. He just lied. He didn't say that someone got in his car. Why would Jones say that he got into the car? I think Mr. Jones, from what the record shows, it doesn't seem that Mr. Jones thought that he was a suspect here. And so there wasn't- Then he would be likely telling the truth that he got into the car. And the district court contemplated- He was in the car to begin with. That's correct. He came to the scene in his telling. Yes, Your Honor. So- The assailant's already at the window, and then they sort of, you know, they start leaving once the shots are fired. Right. And that comes from the preliminary examination testimony from Mr. Jones, that he says, along with repudiating what he said to the police officer, but he says, I was driving around with Mr. Effinger earlier in the day, he dropped me off, this shooting happened, and I ran back to his car, got in his car, and we left. So the district court looked at all of this, and the district court said it's possible that even Mr. Jones and Mr. McRae got in the car. We don't know if that's exactly what happened, but Mr. Perrin says someone got in the car. And the only person, really, who says no one got in the car is Mr. Effinger himself. He says, no one got in my car. He says that one time. Then he says another time he was certain that McRae got in the car with him. Right. So he's kind of all over the place here. And so the only, you know, there are several people who say someone or another got in this car, but Mr. Effinger, whose car it is, says, well, no one got in my car. And so the problem here- You just said that Effinger said several different things. Right. Whether somebody got in his car or not. Right, right. So his recantation, which is sort of, I think, really what a petitioner is pointing to most here in terms of their affirmative evidence of innocence that Mr. Effinger recanted his testimony, he just has too many different stories. And so you can't credit that testimony. I don't know how he helps the prosecution or the defense here. I mean, he changes his story every five years. And say, Your Honor, that we do discount Mr. Effinger's testimony. We still have Perrin's testimony that has never been recanted. They've never been able to find Mr. Perrin to find out if he would have changed his testimony or not. All we have is sworn testimony in front of, Your Honor said, 12 people, exactly twice, once in the district court for the preliminary examination and again for trial, in front of 12 people that, sure, it was 5 p.m. in February in Michigan. And so it was starting to get dark. And he says, This is what I saw. From my perspective, directly behind the victim's car, I saw Sugar on the driver's side then come around, get in the car, and leave. You said Perrin has not been found. So Perrin, according to the record that we have, we do not know what Perrin's current testimony would be. Is that correct? Right. And so the only testimony we have is from the preliminary examination and the trial where he was very consistent in both. That he, as Judge Teflik said, he was very candid about, Well, the only thing I really noticed that might have been different in the lineup was this facial hair issue. But that had a lot to do with the lighting. Like I said, this was 5 p.m. in February in Michigan. And as opposed to sort of, you know, almost surgical bright lights that would be present in the lineup. And so he could see the person's face more clearly. But he found the features of the Sugar and he identified the Sugar. What do you have to say about Dante Effinger's affidavit, I guess it was? I forget if he also testified in connection with the 60B motion. Right. Where he's saying that, you know, Mr. Perrin wasn't sure at the lineup, et cetera. So he did testify at the hearing. And the problem with his testimony is really that it's just far-fetched. The language that the district court used, that Judge Tarnow used about Dante Effinger, he says it strains credulity that this person's story is accurate. That he happened to be in the lineup. He happened to run into Mr. Perrin outside the lineup. They happened to strike up a conversation about the lineup. And Perrin happens to say, well, gosh, I don't know if I picked the right person. That takes a few leaps, not just one, but a few leaps to credit that testimony. And so if you take that and even combine it with the other evidence here, I mean, the real issue here is that none of these witnesses really have any credibility. They've changed their stories. Mr. Character couldn't even decide if he's normally on this street or not. Even Ms. House, you know, all of her intentions might have been pure, but the problem is she couldn't remember. Didn't she remember the key facts? It was the details that she was shaky on. The detail, you know, and I should say more irrelevant details. Well, Your Honor, I think I would have to push back on that a little bit. The details were not relevant. Who is this again? Ms. House, the first witness at the evidentiary hearing. She's the one who said in her affidavit that she wasn't looking at the shooting at first. She just heard the shots. She turned and saw someone running off. And then at the hearing, she testified, well, no, I actually did see the shooting. And, you know, it was not Mr. McRae here. Right, but either way, she said it's not Mr. McRae. So whether she heard it first and then looked or looked and then happened to hear it, she says the same substantive point. Yes, Your Honor, but it does matter that she did or didn't see the shooting. This court put a lot of weight on that in its 2007 opinion that seven of Mr. McRae's eight witnesses did not actually witness the shooting. They might have heard the shots and then looked after, just like Ms. House. And this court said that's not enough. That doesn't show us that no reasonable juror would have convicted Mr. McRae given that evidence. And so I think that the current testimony needs to be weighed the same as this court did in 2007. Were there any other witnesses who put McRae in there shooting into that car besides Mr. Effinger? I'm sorry, Your Honor, you repeat that. Is there any other witness in the case who testified directly that it was the defendant here or the petitioner who was doing the shooting into the car? No, sir, Your Honor, the two witnesses that testified to that were Mr. Perrin and Mr. Effinger. We have those two witnesses, yes. And so, as I said to Judge Kethledge, even if we take away Dartrell Effinger's testimony, you still have Mr. Perrin's testimony. And the other thing I'll point out is this wasn't cited in any of the briefing because this decision just came out of, I think, two months ago in April of this year, but Hubbard v. Smith really goes into a very long discussion about actual innocence and the heightened standard that really needs to be met here. Isn't Hubbard inconsistent with the prior standard of Keith? That was my question. I know there was some discussion. I'm happy to have you ask it. No, I do know that Hubbard discussed Keith. In a disparaging way. Well, Your Honor, I certainly won't. It was not on Keith, so I can be neutral. I certainly won't comment on that. We have the law that the first published opinion governs. Especially if it's right. Yes. In case you wondered where we stood. One thing I will point out, Your Honor, is that whatever. Don't go on Hubbard. No, no, sure. Whatever tone it would have taken. It did point out that Hubbard was in actual innocence for excusing an untimely petition case and Keith was a second or successive petition case. The standards are very similar, but if you're going apples to apples, Hubbard is essentially the more applicable case here. But we do have other cases from earlier such as Souter v. Jones and other cases that deal with the equitable tolling in actual innocence cases. Yes, that's right. That's right. But Hubbard is a published opinion. It's the last in a line, so we look at the first ones. Sure. But going back to what I mentioned before, too, the thing I really want to make sure I stress here is the 60B context that we're in. And so just please keep that in mind as this Court is looking at this, that that is a very difficult standard to meet on top of an already very difficult standard. It's odd, right, that this is a 60B. I mean, they could have brought it by the same means that they had brought the earlier out-of-time petitions, right, and say, well, I'm going to just make the showing necessary to cure the out-of-timeness. Yes, that's true. Do you understand why, any idea why it's a 60B? Your Honor, if I'm being frank, I think that question might be better posed to my opponent here. I just don't know. I mean, the Court really, I mean, Supreme Court tells us to treat 60Bs as a successive petition in circumstances like this, query why we shouldn't do that actually, you know, and treat this as a successive petition, which is actually probably more favorable to the petitioner or the movement because we don't have this clear error thing, which is an odd fit with what we're doing here. And I do see my time is up, Your Honor, but if, oh, I'm sorry. Well, we could talk about it. I can answer his question, but I do have a related question, which is I thought that we have an order in this case from 2009 saying that we should not treat this as a second or successive. I believe that is correct. I do know at some point there was an inquiry on a second or successive petition. I don't know if it related to this evidence or if it was other evidence, but I do believe that inquiry was made. And again, perhaps my opponent here would be able to speak to that a little bit better. But even so, even say this Court were to look at this as a second or successive petition, I think the provision that Mr. McRae would need to satisfy here is from Keith. And that's a very similar standard. In fact, maybe even a little harder because the probability. Exactly. It's clear and convincing as opposed to preponderance. Unless Your Honors have any further questions, I'm happy to answer them, but we just ask that you affirm. Thank you. Thank you.  Respondent would have this Court believe that when it comes to Eric Perrin, all we have is his trial testimony as it stood at the time. But that's just not true. Today we have more information that sheds credibility on the notion that he misidentified Lloyd McRae, including, like I've said, the lineup, his misidentification of the driver. And I would like to take a minute to disagree with the idea that he was candid at trial. As I said, he lied when he was asked whether he made those tentative statements in front of the jury. That's a strong word for a disinterested person, but you can go ahead. He denied having made those tentative statements. And when Mr. McRae's attorney attempted to impeach him with the trial testimony of the lineup attorney, he wasn't able to get that information out. So I think it's improper to hold Eric Perrin's trial testimony on a pedestal when we have so much information that demonstrates that it wasn't a credible identification. I want to talk a little bit, too, about the fact that some of these witnesses came a little bit later. A lot of that is due in part to some of the ineffective assistance of counsel issues that are related to the merits of this claim. There were a variety of witnesses who would have come forward at the time but did not come until later. For example, why wouldn't his sister just come forward? You don't need a lawyer to tell you to do that. He's got four family members that now appear and say they were on the street that day. Why wouldn't they have come forward sooner on their own volition? Well, he had relatives that were ready and willing to testify and believed that his attorney at trial was going to call them, but he didn't. Which is why we're asking this court to just allow him to get to the merits and find this threshold step has been met by Mr. McRae and that he's established that it's more likely than not that any reasonable juror would find reasonable doubt. We have a record that is overflowing with reasonable doubt, but that's not what he needs to show. Oida McRae only needs to show that it's more likely than not that any reasonable juror would find that reasonable doubt exists at all. Thank you. I didn't realize you were finished. You did a fine job with your briefing in this case. Thank you, Judge. We appreciate the arguments that both sides have made.